Filed 7/31/26

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| DAVID SALAMON,<br><br>        Plaintiff and Appellant,<br>v.<br><br>ORCHID GLOBAL, INC.,<br><br>        Defendant and Respondent. | A173959<br><br>(City & County of San Francisco Super. Ct. No. CPF25519071) |

David Salamon, a shareholder of Orchid Global, Inc. (Orchid), filed in the San Francisco Superior Court a petition for a writ of mandate to compel Orchid to allow him to inspect its corporate records pursuant to Corporations Code sections 1600 and 1601.[1] Orchid moved to stay the proceedings based on a forum selection clause in its bylaws designating Delaware as the exclusive forum for any action asserting a claim against it "governed by the internal affairs doctrine." The trial court granted the motion, and Salamon appeals. He argues the trial court erred in (1) finding the forum selection clause covered his claims under sections 1600 and 1601 and (2) rejecting his assertion that the clause was unenforceable as against public policy. We disagree with the first point, but agree with the second. Accordingly, we reverse the order granting Orchid's motion to stay.

---

[1] Undesignated statutory references that follow are to the Corporations Code.

1

## BACKGROUND

**The Facts[2]**

Orchid and its subsidiary, Orchid Labs, Inc., are Delaware corporations with their principal places of business in San Francisco. Orchid Labs, Inc. is a software provider.

Salamon is a California resident, and was a contractor for Orchid from 2017 to 2019. He has held 11.11% of Orchid's outstanding voting shares since 2019. In December 2024, Orchid offered to purchase all of Salamon's shares for $1,372.880.

On April 1, 2025, Salamon's counsel sent a letter to Orchid's counsel requesting to inspect the following documents pursuant to sections 1600 and 1601[3]:

"1. The record of the names and addresses of all shareholders and the number of shares held by each;

"2. All minutes of meetings of the shareholders, Board of Directors, and/or committees of the Board for the past five years;

"3. All quarterly and annual financial statements of the Company

---

[2] The facts are taken from the petition, its attached exhibits, and the declarations and exhibits attached to the parties' papers in connection with the motion to stay.

[3] Section 1600, subdivision (a) states in relevant part: "A shareholder . . . holding at least 5 percent in the aggregate of the outstanding voting shares of a corporation . . . shall have an absolute right to . . . inspect and copy the record of shareholders' names and addresses and shareholdings . . . ." And section 1601, subdivision (a) states in relevant part: "The accounting books, records, and minutes of proceedings of the shareholders and the board and committees of the board of any domestic corporation . . . shall be open to inspection at the corporation's principal office in California . . . for a purpose reasonably related to the holder's interests as a shareholder . . . ."

and its subsidiaries, including income statements, balance sheets, and cash flow statements for the past five years;

"4. All financial audits of the Company and its subsidiaries prepared by an independent auditing firm for the past five years;

"5. Copies of the federal and state income tax returns for the Company and its subsidiaries, including all supporting schedules, for the past five years;

"6. The current Certificate of Incorporation and Bylaws of the Company and its subsidiaries and any amendments thereto;

"7. Documents sufficient to show the terms and status of any off balance sheet loans made by the Company or any of its subsidiaries;

"8. Documents sufficient to show the terms and status of any loans the Company or any of its subsidiaries made to any Board member;

"9. Documents sufficient to show the Company's accounting of OXT[4] owned by, or held in the treasury of, the Company or any of its subsidiaries;

"10. All documents referring or relating to complaints that Orchid Labs, Inc. violates state and/or federal gambling laws; and

"11. All communications of any Board member discussing whether Orchid Labs, Inc. violates state and/or federal gambling laws."

In the letter, Salamon's counsel explained that Salamon was seeking these records "for the following reasons: (1) to confirm his respective ownership interest in the Company; (2) to determine the current and potential value of such interest; (3) to communicate with other shareholders;

---

[4] OXT is Orchid's token, which can be used to pay for the VPN services Orchid offers. A "VPN" in turn is a Virtual Private Network, which is a network that protects a user's privacy by routing their internet connection through a secure server, making it appear as if the use is browsing from that server's location rather than the user's actual location.

3

and (4) to investigate mismanagement and breaches of fiduciary duties by the Company's management."

In a letter dated April 10, Orchid's counsel rejected Salamon's request "in its entirety." Counsel wrote: "the Company is a Delaware corporation and thus the Salamon Demand is void ab initio as it seeks to inspect and copy the Company's books and records under an inapplicable California statute." (Italics omitted.) Counsel further stated: "Separate and apart from the Salamon Demand being invalid under California law, under applicable Delaware law, a shareholder demand to inspect books and records must be for a 'proper purpose.' The Salamon Demand appears to be part of Mr. Salamon's scheme to extort the Company to buy back his Company shares at an inflated price by leveraging bogus 'illegal gambling' allegations regarding Orchid's nanopayment system."

According to Salamon, for the past five years he has not received any financial documents from Orchid and thus has not been able to evaluate the value of his shares.

**Procedural History**

On April 18, Salamon filed in the San Francisco Superior Court a petition for writ of mandate to compel Orchid to allow him to inspect and copy his requested records pursuant to sections 1600 and 1601.

On May 30, Orchid filed in the Delaware Court of Chancery a complaint "for declaratory relief to enforce its rights under Section 220 of the Delaware General Corporation Law" (hereafter, Delaware action). Orchid sought a declaration that "Delaware law (not California law) governs the rights (if any) of minority shareholder Salamon to inspect Orchid's books and records, and that Orchid is not obligated to make its books and records available to Salamon for inspection pursuant to" sections 1600 and 1601.

On that same day, Orchid filed in the superior court a motion to stay

4

the proceedings based on a forum selection clause in its bylaws. That bylaw states in relevant part: "**Forum.** Unless the corporation consents in writing to the selection of an alternative forum, the Court of Chancery of the State of Delaware shall be the sole and exclusive forum for . . . any action asserting a claim against the corporation or any director or officer or other employee of the corporation governed by the internal affairs doctrine."

Orchid argued that "under both California and Delaware law, Salamon's right to inspect Orchid's books and records is an internal affair that is governed by the internal affairs doctrine. That places this dispute squarely under the mandatory forum selection clause under Orchid's Bylaws." Orchid asserted that the trial court thus "should stay this action . . . . during the pendency of the Delaware [action]."

Salamon opposed the motion. He did not dispute Orchid's assertion that the forum selection clause was "mandatory," but argued that "the forum selection clause does not cover this dispute." He maintained that contrary to Orchid's contention, California law "hold[s] that a shareholder inspection demand . . . does not implicate the internal affairs of a Delaware corporation operating in California."

Alternatively, Salamon argued that "[e]ven if the forum selection clause applies," it is "unenforceable because it violates public policy." He asserted that a shareholder's right to inspect corporate records is "unwaivable" under sections 1600 and 1601, and that he would be deprived of such right if the forum selection clause were enforced. (See § 1600, subd. (d) [" 'The rights provided in this section may not be limited by the articles or bylaws' "]; § 1601, subd. (b) [" 'The right of the shareholders to inspect the corporate records may not be limited by the articles or bylaws.' "].)

Orchid filed a reply to the opposition. It reasserted that Delaware law,

not California law, governed the interpretation of the forum selection clause and, in any event, both Delaware and California law hold that a shareholder's right to inspect records is an "internal affair." Thus, Orchid maintained that the forum selection clause covered Salamon's inspection request. Additionally, Orchid disagreed that enforcing the forum selection clause would violate public policy. "To the contrary," Orchid asserted, since "Salamon has a clear avenue to seek inspection of the books and records of Orchid" under section 220 of the Delaware Code.

On July 9, the court conducted a hearing on the motion, prior to which it issued a tentative ruling granting the motion. During the hearing, the court observed that neither party had addressed the question of whether Delaware law or California law governs the interpretation of a forum selection clause in the bylaws of the Delaware corporation. The court stated that question was "dispositive," and asked Salamon's counsel, "What law governs how I interpret that forum selection clause?" Salamon's counsel stated (incorrectly) that "the bylaws say that Delaware law applies.[5] Counsel proceeded to argue that "the Court has to interpret California Corporations Code 1600, and so that should be decided under California law whether that involves and invokes the Internal Affairs Doctrine."

The parties also addressed Salamon's argument that the forum selection clause was unenforceable as contrary to California public policy. Salamon's counsel argued that Salamon "would lose unwaiveable [*sic*] rights" if the forum selection clause were enforced "because there are critical differences between a shareholder inspection demand made under California Corporations Code 1600 and Section 220 of Delaware [Code]." Counsel asserted that the former "provides broader inspection rights" and the latter

---

[5]     In fact, the bylaws contain no choice-of-law provision.

6

"is narrower"; thus, "if [Salamon is] forced to make an inspection demand under Delaware law, he will lose valuable protections under California law and will be severely limited in the financial information that he can seek."

At the conclusion of the hearing, the court adopted its tentative ruling as its final order. On July 11, the court filed its written order granting Orchid's motion to stay.

In the order, the court first assessed, as a matter of contract interpretation, whether Salamon's inspection demand was covered by the forum selection clause. The court determined that Delaware law governed the interpretation of that clause. As to whether a shareholder's inspection request constituted a matter concerning a corporation's "internal affairs" within the meaning of the clause, the court noted that Delaware law answered that question in the affirmative. The court added that in any event, "California law is in accord." Accordingly, the court concluded that the forum selection clause covered Salamon's claims.

The court turned to, and rejected, Salamon's argument "that the court should not enforce the forum selection clause because it would vitiate his unwaiveable [*sic*] right as a California resident shareholder to inspect Orchid's books." The court explained: "Salamon cites two public policies," one of which was "his unwaiveable [*sic*] right as a shareholder to inspect Orchid's books under Corporations Code 1601. . . . Delaware law allows for inspection rights of the corporation's books by 'any shareholder' who demands it, provided the shareholder articulates a 'proper purpose.' (Del. Code Ann. tit. 8, § 220 . . . .) The Delaware Court of Chancery . . . recognizes that a shareholder's desire to inspect corporate books to value his shares is a proper purpose. (*Woods Trustee v. Sahara Ents., Inc.* (Del. Ct. Ch. 2020) 238 A.3d 879, 891 . . . .) That is the purpose Salamon recites here. . . . The court

7

therefore concludes that enforcing the forum-selection clause does not offend California public policy."

This appeal followed.

While the appeal was pending, on November 6, Salamon filed in this court, and we granted, an unopposed request for judicial notice of several filings in the Delaware action: his motion to dismiss the action for lack of personal jurisdiction over him; his accompanying affidavit; Orchid's opposition to the motion; his reply; and his supplemental affidavit.

Salamon subsequently filed two additional unopposed requests for judicial notice. One sought judicial notice of the transcript of the hearing on his motion to dismiss in the Delaware action. The other sought judicial notice of the Delaware Court of Chancery's memorandum opinion and order granting the motion to dismiss on the ground that Orchid lacked personal jurisdiction over Salamon.[6] We deferred ruling on these requests for judicial notice pending consideration of the merits of this appeal. We now grant both requests. (See Evid. Code, §§ 452, subd. (d), 459.)

## DISCUSSION

Salamon argues the trial court erred in (1) determining that his claims in this action fell within the scope of the forum selection clause, and (2) rejecting his contention that applying the forum selection clause would be

---

[6]     The Delaware court concluded that Orchid failed to make a prima facie showing of personal jurisdiction over Salamon because it failed to demonstrate Salamon expressly or impliedly consented to such jurisdiction. The court noted that stock ownership alone is insufficient to establish personal jurisdiction. It also rejected Orchid's reliance on the forum selection clause as a basis to find personal jurisdiction, noting that the clause plainly applies only to an "action asserting a claim *against* the corporation" and that the Delaware action "is the opposite: a declaratory action brought by the corporation against a minority stockholder."

8

unenforceable as against public policy.  We disagree with Salamon's first argument, but agree with the second.

**General Legal Principles and Standard of Review**

Code of Civil Procedure section 410.30, subdivision (a) permits a court to stay or dismiss an action when the court finds that "in the interest of substantial justice an action should be heard in a forum outside this state." That section provides a statutory mechanism for the application of the doctrine of forum non conveniens.  (*Stangvik v. Shiley Inc.* (1991) 54 Cal.3d 744, 749–750.)

A mandatory forum selection clause such as the one in this case is presumed valid and will be enforced unless enforcement of the clause would be unreasonable under the circumstances of the case.  (*Smith, Valentino & Smith, Inc. v. Superior Court* (1976) 17 Cal.3d 491, 496.)  " ' "Mere inconvenience or additional expense is not the test of unreasonableness" ' for a mandatory forum selection clause."  (*Berg v. MTC Electronics Technologies Co.* (1998) 61 Cal.App.4th 349, 359.)  "A clause is reasonable if it has a logical connection with at least one of the parties or their transaction."  (*Verdugo v. Alliantgroup, L.P.* (2015) 237 Cal.App.4th 141, 147 (*Verdugo*).)

Nonetheless, as explained in more detail below, " 'California courts will refuse to defer to the selected forum if to do so would substantially diminish the rights of California residents in a way that violates our state's public policy.' "  (*Verdugo, supra*, 237 Cal.App.4th at p. 147, quoting *America Online, Inc. v. Superior Court* (2001) 90 Cal.App.4th 1, 12 (*America Online*).)

As recited above, the forum selection clause contained in Orchid's bylaws states in pertinent part:  "the Court of Chancery of the State of Delaware shall be the sole and exclusive forum for . . . any action asserting a claim against the corporation or any director or officer or other employee of the corporation governed by the internal affairs doctrine."

9

Salamon does not dispute that the forum selection clause is mandatory, but argues that it does not apply to his claims seeking to enforce his shareholder inspection rights under sections 1600 and 1601. Those claims, Salamon asserts, are not "governed by the internal affairs doctrine," which is "a conflict of laws principle which recognizes that only one State should have the authority to regulate a corporation's internal affairs—matters peculiar to the relationships among or between the corporation and its current officers, directors, and shareholders—because otherwise a corporation could be faced with conflicting demands." (*Edgar v. MITE Corp.* (1982) 457 U.S. 624, 645; accord, *Grove v. Juul Labs, Inc.* (2022) 77 Cal.App.5th 1081, 1087 [citing *Edgar*]; *Juul Labs, Inc. v. Grove* (Del.Ch. 2020) 238 A.3d 904, 914 (*Juul*) [same].) Salamon maintains that California courts have held that a shareholder's demand to inspect corporate records does *not* qualify as an "internal affair" of a corporation, and that therefore his claims do not fall within the scope of the forum selection clause.

As a threshold matter, Salamon fails to establish the premise of his argument, which is that California law governs the interpretation of the phrase "claim . . . governed by the internal affairs doctrine." As discussed, the trial court determined that Delaware law applied. Salamon argues that "[t]he trial court erred in applying Delaware law to the application of the forum selection clause because doing so violates the anti-waiver provisions of . . . [sections] 1600 and 1601." But in so arguing, Salamon conflates the *interpretation* of the forum selection clause with its *enforceability*. And as to the interpretation issue, we agree with Orchid that Salamon "simply assumes that California law should be used to interpret [the] mandatory forum selection clause," as he "does not cite to any legal authority for this proposition" or otherwise "grapple with" the authorities upon which the trial

10

court relied to conclude "that Delaware law governs the applicability and scope of the forum selection clause."

A fundamental rule of appellate review is that an appealed judgment or order is presumed to be correct, and the burden is on the appellant to affirmatively demonstrate that the trial court committed error. (*Jameson v. Desta* (2018) 5 Cal.5th 594, 608–609.) This rule is the same even when the appellate court is required to conduct a de novo review. (See *Reyes v. Kosha* (1998) 65 Cal.App.4th 451, 466, fn. 6.) For the reasons Orchid states, Salamon has not met his burden to show the trial court erred in applying Delaware law to interpret the forum selection clause. Accordingly, we presume that conclusion was correct. Indeed, Salamon apparently concedes as much in his reply brief, stating, "In general, the law of the state of incorporation governs the interpretation of a corporation's bylaws." Therefore, we need not and do not address Salamon's arguments interpreting the forum selection clause under California law.

Turning to what Delaware law says on whether a shareholder's demand to inspect corporate records is a matter governed by the internal affairs doctrine, the parties agree that the answer to that question is "yes." (*Juul*, *supra*, 238 A.3d at p. 915 ["[s]tockholder inspection rights are a core matter of internal corporate affairs," as "the ability of stockholders to access books and records [is] 'an important part of the corporate governance landscape' "].)

Applying that law to the forum selection clause here, we conclude the trial court correctly found that Salamon's shareholder inspection demand is a "claim . . . against [Orchid] . . . governed by the internal affairs doctrine," and, therefore, within the scope of the forum selection clause.

11

**The Trial Court Erred in Enforcing the Forum Selection Clause**

Having concluded the forum selection clause applies to Salamon's claims, we turn to the enforceability of the clause. Salamon argues "Enforcement of the Forum Selection Clause Violates Public Policy and [his] Unwaivable Statutory Rights Under [sections] 1600 and 1601." This time, we agree with Salamon.

### *Applicable Law*

Mandatory forum selection clauses such as the one in Orchid's bylaws " 'typically will be enforced, absent a showing that enforcement of the forum selection clause would be unfair or unreasonable. [Citations.] "This favorable treatment is attributed to our law's devotion to the concept of one's free right to contract, and flows from the important practical effect such contractual rights have on commerce generally." ' " (*EpicentRx, Inc. v. Superior Court*(2025) 18 Cal.5th 58, 74 (*EpicentRx*).)

"One exception to this general rule of enforceability is grounded in public policy. California courts have held that 'a forum selection clause will not be enforced if to do so would bring about a result contrary to the public policy of this state.' " (*EpicentRx, supra*, 18 Cal.5th at p. 74; accord, *America Online, supra,* 90 Cal.App.4th at p. 12 ["California courts will refuse to defer to the selected forum if to do so would substantially diminish the rights of California residents in a way that violates our state's public policy"].)

The Courts of Appeal have developed a framework for analyzing forum selection clauses that threaten a public policy of California. (*EpicentRx, supra*, 18 Cal.5th at p. 80, citing *Verdugo, supra*, 237 Cal.App.4th at p. 157; *America Online, supra*, 90 Cal.App.4th at p. 10; and *Wimsatt v. Beverly Hills*

*Weight etc. Internat., Inc.* (1995) 32 Cal.App.4th 1511, 1522 (*Wimsatt*).)[7] Generally, the party opposing enforcement of a forum selection clause bears the burden of " ' " 'show[ing] that its enforcement would be in violation of the settled public policy of this state.' " ' " (*EpicentRx*, *supra*, at p. 76.) If that party makes that showing in a case in which the public policy is "based on unwaivable rights created by California statutes," the burden is reversed, and "the party seeking to enforce the forum selection clause bears the burden to show litigating the claims in the contractually designated forum 'will not diminish in any way the substantive rights afforded . . . under California law.' " (*Verdugo*, at p. 147–148, citing *America Online*, at p. 10–11; *Wimsatt*, at pp. 1520–1524; accord *EpicentRx*, at p. 80.)

A trio of Court of Appeal cases—*Wimsatt*, *America Online*, and *Verdugo*—are instructive.

In *Wimsatt*, the plaintiffs were California franchisees who brought

---

[7] Although *EpicentRx* noted and described this burden-shifting framework, it expressly declined to consider the merits of *Wimsatt*, *America Online*, or *Verdugo*. (See *EpicentRx*, *supra*, 18 Cal.App.5th at p. 71, fn. 3.) The issue on review in *EpicentRx* was whether the lower courts correctly declined enforcement of a forum selection clause on the basis that requiring the plaintiff to litigate its claims in the foreign forum would effectively deprive plaintiff of its right to a jury trial. (See *EpicentRx*, at pp. 67, 71–72.)

Pending disposition in *EpicentRx*, the Supreme Court granted review of the same issue in *Lathrop v. Thor Motor Coach, Inc.* (2024) 105 Cal.App.5th 808 (review granted Jan. 15, 2025, S287893) (*Lathrop*). After *EpicentRx* was decided in July 2025, the Supreme Court in *Lathrop* ordered briefing on three issues including this one: "Where a party alleges that enforcement of a forum selection clause would result in a waiver of the party's unwaivable statutory rights, what is the showing necessary to enforce (or avoid enforcement) of such a clause, and which party bears the burden of proof on the issue?" The parties completed briefing and the case is pending oral argument. Until the Supreme Court says otherwise, we will follow the burden-shifting framework developed by the Courts of Appeal.

claims under California's Franchise Investment Law (FIL; § 31001 et seq.) against their franchisor. (*Wimsatt*, *supra*, 32 Cal.App.4th at p. 1513.) The FIL contains an anti-waiver provision voiding any contractual term purporting to require a franchisee to "waive compliance with any provision of this law or any rule or order hereunder." (§ 31512.) *Wimsatt* explained that a forum selection clause (in favor of Virginia) "carrie[d] the potential to contravene this statute by placing litigation in a forum in which there is no guaranty that California's franchise laws will be applied to a franchisee's claims." (*Wimsatt*, at p. 1520.) The court reasoned that in light of the Legislature's "special solicitude for franchisees in their dealings with franchisors" and "the need to prevent the easy circumvention of the antiwaiver statute," the usual burdens should be reversed. (*Id.* at pp. 1521–1522.) *Wimsatt* held that in order to enforce the forum selection clause, the franchisor must show that "litigation in the contract forum will not diminish in any way the substantive rights afforded California franchisees under California law." (*Id.* at p. 1522.) This special rule was needed, the court reasoned, to resolve "the problem of the interaction between a forum selection clause and certain specific protections enacted to benefit in-state investors" in this type of case. (*Id.* at p. 1523.)

In *America Online*, a plaintiff brought a putative class action lawsuit against an internet service provider, including under California's Consumers Legal Remedies Act (CLRA; Civ. Code, § 1750 et seq.). (*America Online*, *supra*, 90 Cal.App.4th at p. 5.) The CLRA specifically provides for the prosecution of class actions. (Civ. Code, §§ 1752, 1781.) The CLRA also expressly voids and renders unenforceable any purported waiver of rights under the CLRA as being contrary to California public policy. (Civ. Code, § 1751.) The plaintiff's agreement with the provider contained a forum

14

selection clause and choice of law clause in favor of Virginia. (*America Online, supra,* 90 Cal.App.4th at p. 6.)

This court held that these provisions ran afoul of the CLRA's antiwaiver provision (Civ. Code, § 1751) because they "would necessitate a waiver of the statutory remedies of the CLRA, in violation of that law's antiwaiver provision and California public policy." (*America Online*, *supra*, 90 Cal.App.4th at p. 29.) Our conclusion was "reinforced" by comparing California's and Virginia's consumer protection laws. That comparison revealed that "Virginia's law provides significantly less consumer protection to its citizens than California law provides for our own," because Virginia law did not authorize class actions, allowed only limited injunctive relief, and did not allow enhanced remedies for disabled and senior consumers, or punitive damages. (*Id.* at pp. 15–17.) We thus concluded that the rights of the plaintiff and class members "would be substantially diminished if they are required to litigate in Virginia." (*Id.* at p. 5.)

*Verdugo*, in turn, involved a plaintiff who brought wage and hour claims under the Labor Code against her employer. (*Verdugo*, *supra*, 237 Cal.App.4th at p. 144.) An employment agreement included a forum selection clause and choice of law clause in favor of Texas. (*Id.* at p. 146.) On appeal from the grant of the employer's motion to stay based on those clauses, the *Verdugo* court discussed the burden-shifting framework developed in *Wimsatt* and *America Online*. (*Verdugo*, at pp. 148–153.) *Verdugo* then offered guidance on how a defendant can meet its burden. It noted that *America Online*, "did not address how a defendant could show enforcing a forum selection clause would not diminish a plaintiff's unwaivable statutory rights." (*Verdugo*, at p. 157.) And while *America Online* did not hold that conducting a comparison between California's law and those of the foreign jurisdiction

15

was required, "it nonetheless conducted an extensive comparison of California and Virginia law to 'reinforce[ ]' its conclusion enforcing the forum selection clause would diminish the plaintiffs' statutory rights." (*Verdugo*, at p. 157, citing *America Online*, at pp. 15–18.) Thus, *Verdugo* concluded that the defendant "may rely on a comparison of California and [the foreign jurisdiction] law to meet its burden." (*Verdugo*, at p. 158.)

To sum it up, *Verdugo* stated: "a defendant seeking to enforce a mandatory forum selection clause bears the burden to show enforcement will not in any way diminish the plaintiff's unwaivable statutory rights. By definition, this showing requires the defendant to compare the plaintiff's rights if the clause is not enforced and the plaintiff's rights if the clause is enforced. Indeed, a defendant can meet its burden only by showing the foreign forum provides the same or greater rights than California, or the foreign forum will apply California law on the claims at issue." (*Verdugo*, *supra*, 237 Cal.App.4th at p. 157.)

And so analyzed in *Verdugo*, the court held that the forum selection and choice of law clauses were unenforceable because "all of [the plaintiff's] claims are based on her statutory rights under the Labor Code" (*Verdugo*, *supra*, 237 Cal.App.4th at p. 150), those rights are unwaivable (*ibid.*, citing Lab. Code, § 219, subd. (a)), and defendant "fail[ed] to cite any Texas authority granting [the plaintiff] comparable remedies for the violation of these rights" (*Verdugo*, at p. 161).

### *Analysis*

Salamon argues that: (1) his claims are based on statutory rights that the Legislature has declared unwaivable in section 1600, subdivision (d) and section 1601, subdivision (b); (2) these provisions embody California's public policy to "provide California shareholders with the means to verify a corporation's actions and to ensure that their interests were being protected";

16

and (3) the potential of the forum selection clause in Orchid's bylaws to impact his unwaivable rights placed the burden on Orchid to prove that enforcing the clause " 'will not diminish in any way the substantive rights afforded [him] under California law.' "

Orchid concedes the first two points. We accept those concessions.

First, we agree with the parties that a shareholder's right to inspect corporate records under sections 1600 and 1601 are unwaivable. Both provisions expressly apply to any foreign corporation having its principal office in California, and thus to Orchid here. (§§ 1600, subd. (d), 1601, subd. (a)(1).) Section 1600 (granting shareholders the right to inspect the list of shareholders) states in subdivision (d) that "[t]he rights provided in this section" shareholder's ability to inspect "*may not be limited* by the articles or bylaws." (Italics added.) Section 1601 (granting the shareholders the right to inspect other corporate records) similarly states in subdivision (b) that the rights provided under that section "*may not be limited*" by a corporation's bylaws. (Italics added.) We construe these provisions as voiding any purported limitation or waiver of the rights set forth therein.

That sections 1600 and 1601 do not expressly prohibit a "waiver" or declare any of kind of agreement "void" does not alter our conclusion. *Verdugo* is instructive. The Labor Code provisions upon which Verdugo based her claims stated that the rights therein cannot "in any way be contravened or set aside by a private agreement." (*Verdugo, supra*, 237 Cal.App.4th at p. 152.) The *Verdugo* court compared those provisions with the FIL provisions in *Wimsatt* and the CLRA provisions in *America Online*, which used the words "waiver" or "void" any attempt to "waive" the protections of those laws. (*Verdugo*, at pp. 151–152.) Although the Labor Code provisions in *Verdugo* did not contain similar language, the *Verdugo*

17

court stated the inclusion of such language "is irrelevant" and it "must look to the legal effect of those statutes." (*Id.* at p. 152.) *Verdugo* concluded that the Labor Code sections "have the same legal effect as the antiwaiver provisions in the FIL and the CLRA." (*Verdugo*, at p. 152.) We reach the same conclusion as to sections 1600 and 1601. (Accord, Friedman, Cal. Practice Guide: Corporations (The Rutter Group 2025) ¶¶ 6:503, 6:519 ["Although the Code does not expressly so provide, it seems clear that any [article or bylaw] purporting to [limit shareholders' inspection rights] would be void as contrary to public policy"].)

Second, we agree with the parties that the public policy embodied in sections 1600 and 1601 is to "provide California shareholders with the means to verify a corporation's actions and to ensure that their interests were being protected." The rationale for shareholder's inspection rights is that " 'a stockholder has an interest in the assets and business of the corporation and that such inspection [of the books of the corporation] may be necessary or proper for the protection of his interest or for his information as to the condition of the corporation and the value of his interests therein.' " (*Schnabel v. Superior Court* (1993) 5 Cal.4th 704, 715–716.) The bill that enacted section 1600 et seq. was aimed at "improving the rights of shareholders" (Sen. Democratic Caucus, analysis of Assem. Bill No. 376 (1975–1976 Reg. Sess.)) and "enhanc[ing] the protections afforded investors in foreign corporations having the principal situs in California" (former Dept. of Corporations, Enrolled Bill Rep. on Assem. Bill No. 376 (1975–1976 Reg. Sess.) p. 7). The bill was enacted based in part on a concern about "certain business that have incorporated under foreign law apparently to escape the more rigorous substantive protections afforded under . . . California law." (*Id.* at p. 5.)

18

This leads us to Salamon's third point, that because his claims are based on unwaivable statutory rights, Orchid bore the burden to prove that " 'litigating the claims in [Delaware] "will not diminish in any way the substantive rights afforded . . . under California law." ' " (*Verdugo*, *supra*, 237 Cal.App.4th at pp. 147–148.)  Orchid does not address, let alone dispute, this.  In any event, Salamon is correct that Orchid bore the burden of proof. (*Ibid*.)

As to whether Orchid met that burden, Salamon argues that "Orchid made no showing—and could make no showing—that Delaware 'provides the same or greater rights than California, or the [Delaware Court of Chancery] will apply California law on the claims at issue.' "  While we agree with this argument for reasons later explained, the argument calls our attention to a more fundamental issue overlooked by the parties, which is whether the trial court required Orchid to carry its burden of proof in the first place.  The record is unclear on this issue.

In its order granting Orchid's motion to stay, the court noted Salamon's argument "that the court should not enforce the forum selection clause because it would vitiate his unwaiveable [*sic*] right as a California resident shareholder to inspect Orchid's books."  The court quoted *Verdugo*, *supra*, 237 Cal.App.4th at page 147:  "California courts will refuse to defer to the selected forum if to do so would substantially diminish the rights of California residents in a way that violates our state's public policy."  The court then noted that "Salamon cites two public policies," one of which was "his unwaivable right as a shareholder to inspect Orchid's books under Corporations Code 1601."  As to that, the court wrote, "Delaware law allows for inspection rights of the corporation's books by 'any shareholder,' " and that Delaware case law "recognizes that a shareholder's desire to inspect

19

corporate books to value his shares is a proper purpose," which is "the purpose Salamon recites here." Therefore, the court "conclude[d] that enforcing the forum-selection clause does not offend California public policy."

The court did not mention or suggest that when, as here, unwaivable rights are involved, the defendant has the burden to show litigating in a different forum will not diminish those rights if the forum selection clause were enforced. The court thus did not address whether Orchid had the burden and whether it met that burden. At the same time, however, the court did quote *Verdugo*, which sets forth the burden-shifting framework in a case involving unwaivable rights. Further, in Salamon's opposition to the motion to stay, he described the burden-shifting framework set forth in *Verdugo* and similar cases, maintained that Orchid bore the burden of proof in this case, and argued that it failed to "meet its heavy burden of "showing enforcement of the forum selection clause will not diminish Salamon's substantive rights under California law." Based on this record, it is unclear whether the court required Orchid to show that litigating in Delaware would not diminish Salamon's rights under California law.

We must, however, resolve this ambiguity so as to support the trial court's order. (See *In re Eli B.* (2022) 73 Cal.App.5th 1061, 1069; *Winograd v. American Broadcasting Co.* (1998) 68 Cal.App.4th 624, 631 ["[a] ruling by a trial court is presumed correct, and ambiguities are resolved in favor of affirmance"]; *Lafayette Morehouse, Inc. v. Chronicle Publishing* Co. (1995) 39 Cal.App.4th 1379, 1384 [only "[w]hen the record clearly demonstrates what the trial court did" will the reviewing court "not presume it did something different"]; see also *McDermott Will & Emery LLP v. Superior Court* (2017) 10 Cal.App.5th 1083, 1103 ["We presume the trial court knew and properly applied the law absent evidence to the contrary"].) Here, the record does not

20

*clearly* demonstrate that the trial court failed to consider whether Orchid met its burden to show litigating in Delaware would not diminish the Salamon's unwaivable rights under section 1600 et seq. Accordingly, we presume that the court considered that question, and we infer from its ruling that it impliedly resolved that question in favor of Orchid.

The question becomes whether the trial court erred in impliedly finding that Orchid met its burden to prove that litigating in a different forum will not diminish Salamon's rights under California law.

As noted, to meet that burden, Orchid had to show that a Delaware court would either (1) provide "the same or greater rights than California" or (2) "apply California law on the claims at issue." (*Verdugo, supra*, 237 Cal.App.4th at p. 157.) Orchid does not rely on the second option. It acknowledges that "[t]here is no choice of law provision in the forum selection clause in Orchid's bylaws and, thus, on this record it is not yet clear which set of laws the Delaware Chancery Court would apply if that clause were to be enforced in this case."[8] Thus, to meet its burden, Orchid had to establish the first option—that a Delaware court would provide "the same or greater rights than California." (*Verdugo*, at p. 157.)

Salamon contends that "the trial court did not conduct the full analysis of comparing the California and Delaware inspection statutes. And Orchid did not meet its burden of showing Salamon would have the same or greater rights if forced to litigate his inspection demand in Delaware." Orchid counters, in a footnote, "that the Superior Court did not have to conduct some exhaustive side-by-side comparison of the shareholder inspection laws, as

_____

[8] Orchid in fact took a much stronger position in its complaint in the Delaware action, alleging that "[t]he right of a stockholder to inspect books and records of a Delaware corporation . . . is governed exclusively by Section 220 of the [Delaware Code] and Delaware law."

21

[Salamon] contends. . . . It was entirely proper for the Superior Court to end its analysis upon its determination that [Salamon] would have a meaningful right to inspect Orchid's books and records if this dispute is tried in Delaware court and under Delaware law. In any event, the case law upon which [Salamon] relies does not support the notion that a side-by-side comparison should be conducted by the trial court. See *America Online*, 90 Cal.App.4th at 14 (noting that prior precedent does not require such a comparison)."

To the extent Orchid suggests we should not follow *Verdugo* for its requirement of a comparative analysis, such argument is unpersuasive, given that Orchid itself relies on a comparison of Delaware's and California's laws to argue that the trial court's ruling was correct. For example, Orchid asserts: "As the Superior Court correctly held, [Salamon's unwaivable] right would not be waived if this dispute was moved to Delaware court and adjudicated under Delaware law because Delaware law gives shareholders the right to inspect corporate records provided they seek to do so for a proper purpose", and "what matters is that [Salamon] would have the right to inspect Orchid's books and records to evaluate his buyout offer under either set of laws."

In any event, while it is true, as Orchid states, that in *America Online* this court noted that "prior precedent" did not require a comparative analysis, *Verdugo* explained that the prior precedent (i.e., *Hall v. Superior Court* (1983) 150 Cal.App.3d 411 (*Hall*)) was "decided 12 years before *Wimsatt* first recognized an exception to the ordinary burden of proof on a motion to enforce a mandatory forum selection clause [citations], and therefore *Hall* did not consider whether placing the burden on the defendant to show the plaintiff's rights will not be diminished would require a comparison of the two forums' laws. [Citation.] *America Online* was decided

22

after *Wimsatt* and extended its exception to claims under the CLRA, but *America Online* did not address how a defendant could show enforcing a forum selection clause would not diminish a plaintiff's unwaivable statutory rights." (*Verdugo, supra*, 237 Cal.App.4th at p. 157.) Moreover, as discussed above, although *America Online* did not hold that a comparative analysis was required, "it nonetheless conducted an extensive comparison of California and Virginia law to 'reinforce[ ]' its conclusion enforcing the forum selection clause would diminish the plaintiffs' statutory rights." (*Verdugo*, at p. 157.) For these reasons, we are inclined to follow *Verdugo*'s rule that a comparison between California's laws and those of the foreign jurisdiction "is necessary to determine whether a forum selection . . . clause would violate California's public policy embodied in its governing statutes." (*Ibid*.)

As to the parties' framing of the issue as to whether the *trial court* erred in failing to conduct the comparative analysis, that framing somewhat misses the mark. As discussed, *Verdugo* explained: "a *defendant* seeking to enforce a mandatory forum selection clause bears the burden to show enforcement will not in any way diminish the plaintiff's unwaivable statutory rights. By definition, this showing requires the *defendant* to compare the plaintiff's rights if the clause is not enforced and the plaintiff's rights if the clause is enforced." (*Verdugo, supra*, 237 Cal.App.4th at p. 157, italics added.) Thus, it is the *defendant* who is required to conduct the comparative analysis in order to discharge *its* burden to prove that enforcement will not in any way diminish the plaintiff's unwaivable statutory rights. And it is the trial court's duty to hold the defendant to that burden.

Here, Salamon contends that Orchid did not, and could not, meet its burden of showing that Delaware would "provide[ ] the same or greater rights than California." (*Verdugo, supra*, 237 Cal.App.4th at p. 157.) We agree.

23

First of all, it is noteworthy that even though Orchid concedes that Salamon's claims are based on unwaivable statutory rights, it does not acknowledge that it bore the burden to prove enforcement of the forum selection clause, much less argue that it met its burden. In fact, Orchid never even mentions the word "burden" in its respondent's brief. Orchid's presentation on appeal is consistent with its moving papers below, which also never acknowledged or argued that it met its burden of proof.

In its reply to Salamon's opposition to the motion to stay, Orchid disputed Salamon's assertion that enforcing the forum selection clause would violate public policy, arguing, in conclusory fashion, that "Salamon has a clear avenue to seek inspection of the books and records of Orchid" pursuant to section 220 of the Delaware Code.

At the hearing on Orchid's motion to stay, Salamon's counsel compared the two forums' inspection statutes and argued: "the reason why he would lose unwaiveable [*sic*] rights by [enforcing the forum selection clause] is because there are critical differences between a shareholder inspection demand made under California Corporations Code 1600 and Section 220 of Delaware."

And counsel went on to embellish his argument:

"A Section 1600 inspection demand provides broader inspection rights. It generally allows shareholders to inspect and copy corporate records including accounting books, minutes of meetings, and shareholder lists. [¶]

"By contrast, a Section 220 demand is narrower and specifically defines and limits the term books and records in the statute to a list of formal corporation documents such as the certificate of incorporation, the bylaws, a limited set of meeting minutes, and a limited set of annual financial statements.

24

"So here, Mr. Salamon's California inspection demand requested five years of quarterly and annual financial statements, five years of board meeting minutes, copies of financial audits, copies of federal and state income tax returns, documents showing off-balance sheet loans, and documents showing loans to board members. [¶] And Mr. Salamon needs these documents to evaluate the buyout offer and proper evaluate his shares.

"Now, under an inspection demand made under California Corporations Code 1600 and 1601, he would be entitled to all of those documents. [¶] However, under Delaware law and Section 220, Mr. Salamon is limited to three years of board meeting minutes and three years of annual financial statements. [¶] He's not entitled to quarterly financial statements. He's not entitled to tax returns. He's not entitled to any documents showing off-balance sheet loans or any documents showing loans to directors of Orchid.

"And so for that reason, if he's forced to make an inspection demand under Delaware law, he will lose valuable protections under California law and will be severely limited in the financial information that he can seek. [¶]

"And so for that reason, the forum selection clause violates public policy and should not be enforced."

Orchid's counsel did not refute Salamon's counsel's interpretation of the competing statutes, but argued, "it's not entirely clear at least on this record that Mr. Salamon would not be able to get the sufficient records that he needs to evaluate the buyout offer . . . ." Orchid's counsel continued, "this is exactly why the stay motion here is needed. Because we have an action in Delaware that's ongoing where Mr. Salamon is going to make these arguments, and the Delaware Court will, you know, assess those arguments and will ultimately decide what, if anything, he's allowed to bring or seek."

To the extent the court found Orchid's presentation below was sufficient to discharge its burden of proving that litigating Salamon's claims " 'will not diminish in any way [his] substantive rights afforded . . . under [sections 1600 and 1601]' " (*Verdugo, supra*, 237 Cal.App.4th at pp. 147–148), the court erred.

To begin with, although Orchid pointed to the existence of Delaware's shareholder inspection statute (Delaware Code section 220), it did not provide any meaningful analysis as to whether that statute "provides the same or greater rights than California, or the foreign forum will apply California law on the claims at issue." (*Verdugo, supra*, 237 Cal.App.4th at p. 157.) It did not compare the rights afforded under Delaware Code section 220, and those under sections 1600 and 1601. Instead, Salamon essentially conducted that analysis for Orchid, concluding that merely because Delaware possesses a shareholder inspection statute does not mean that Salamon would have the "same or greater rights" under the Delaware statute as he would under the California statutes.

A cursory review of the two forums' shareholder inspection statutes supports Salamon's assertion that Delaware law would not "provide the same or greater rights" than sections 1600 and 1601. (*Verdugo, supra*, 237 Cal.App.4th at p. 157.)

We start with section 1600, which gives any shareholder holding at least five percent in the aggregate of the outstanding voting stock of a corporation "an *absolute right* to do either or both of the following: (1) inspect and copy the record of shareholders' names and addresses and shareholdings during usual business hours upon five business days' prior written demand upon the corporation, or (2) obtain from the transfer agent for the corporation, upon written demand and upon the tender of its usual charges

26

for such a list . . . , a list of the shareholders' names and addresses, who are entitled to vote for the election of directors, and their shareholdings, as of the most recent record date for which it has been compiled or as of a date specified. . . ." (§ 1600, subd. (a), italics added.)

By its plain terms, section 1600 establishes a broad right of inspection and imposes no requirement on a shareholder to show a proper purpose for the inspection. (See *Valtz v. Penta Investment Corp.* (1983) 139 Cal.App.3d 803, 808, 810 ["The public policy of California is to place no proper-purpose restriction on a shareholder's right of inspection and the California courts must enforce that policy despite [the defendant's] Delaware incorporation"]; see also *Johnson v. Langdon* (1902) 135 Cal. 624, 627 [addressing predecessor statute to section 1600: "The statute is founded upon the principle that the shareholders have a right to be fully informed as to the conditions of the corporation, the manner in which its affairs are conducted, and now the capital to which they have contributed is employed and managed. The shareholder is not required to show any reason or occasion for making the examination"].) Thus, under section 1600 a shareholder need only show that he or she is a shareholder with the requisite percentage of shareholdings and that he or she made a demand for inspection.[9]

_____

[9] We note that in a court action based upon a refusal of a lawful demand for inspection, under section 1603 the trial court may impose "just and proper conditions" upon a shareholder's otherwise "absolute" inspection rights in appropriate cases. (§ 1603, subd. (a).) But it is up to the corporation refusing the demand to show why the inspection should be curtailed by "just and proper conditions." (Cf. *Fowler v. Golden Pacific Bancorp, Inc.* (2022) 80 Cal.App.5th 205, 217, 219 [under analogous § 1602, directors' inspection right is "absolute," but courts may nevertheless impose "just and proper conditions" on the inspection under section 1603, subd. (a)]; see *Fowler, supra,* 80 Cal.App.5th at pp. 218–221 [and cases cited therein] [recognizing "the general rule favoring unfettered access" in § 1602 is subject to

27

Delaware's inspection statute, section 220 of the Delaware Code (section 220), also gives shareholders the right to inspect "[t]he corporation's stock ledger, a list of its stockholders, and its other books and records." (Del. Code, § 220, subd. (b)(1)(a).) However, unlike section 1600, this right is not absolute, and requires the shareholder to demonstrate the following: (1) "The . . . demand is made in good faith and for a proper purpose"; (2) "The . . . demand describes with reasonable particularity the stockholder's purpose and the books and records the stockholder seeks to inspect"; and (3) "The books and records sought are specifically related to the stockholder's purpose." (Del. Code, § 220, subd. (b)(2).)

Thus, while section 1600 would grant a shareholder an inspection of the corporation's list of shareholders' names, addresses, and shareholdings, the same would not necessarily be true under the more restrictive Delaware statute. (Cf. *Havlicek v. Coast-to-Cast Analytical Services, Inc.* (1995) 39 Cal.App.4th 1844, 1851–1852 [interpreting directors' "absolute right" to inspect records under section 1602, and concluding that "while the California statutory scheme would grant appellants [directors] an inspection, the same would not necessarily be true under the more restrictive Delaware statute"].)

Salamon has also raised a claim under section 1601, which addresses a shareholder's right to inspect other corporate records. It states in subdivision (a): "The accounting books, records, and minutes of proceedings of the shareholders and the board and committees of the board of any domestic corporation . . . shall be open to inspection at the corporation's principal office in California . . . upon the written demand on the corporation of any

---

exceptions, but those exceptions "should only be applied in 'extreme' cases where enforcing the 'absolute' right of inspection would otherwise produce an absurd result"].)

shareholder . . . at any reasonable time during usual business hours, *for a purpose reasonably related to the holder's interests as a shareholder . . . .*" (§ 1601, subd. (a)(1), italics added.)

Section 1601 bears some resemblance to section 220 of the Delaware Code in that it grants the right to inspect corporate books and records if a proper purpose is shown.  (Del. Code, § 220, subd (b)(2).)  However, there are still material differences between them.  As Salamon notes, in March 2025, shortly before Salamon filed his petition, the Delaware legislature amended section 220, which narrowed the books and records accessible to stockholders and added more rigorous standards governing stockholder demands to inspect corporate books and records.[10]  (See Del. Sen., 153rd Gen. Assembly, Sen. Substitute No. 1 for Sen. Bill No. 21, § 2, effective Mar. 25, 2025.)  Unlike the prior version, amended section 220 limits the definition of "books and records" to enumerated categories of formal corporate documents, including: the certificate of incorporation; the bylaws; minutes of stockholder meetings "for the 3 years preceding the date of the demand"; "[a]ll

---

[10]     "One of the biggest changes in Delaware litigation over the past decade has been the increased usage of books and records demands under Section 220 of the Delaware General Corporation Law . . . and the attendant burden of responding to these demands. . . . Responding to the proliferation of demands and the heightened burdens imposed by them, the Delaware legislature recently adopted amendments to Section 220 to unify its application and restrict its scope."  (Harvard Law School Forum on Corporate Governance, "Recent Updates on Section 220 Demands:  What Changed, What Hasn't, and How to Respond, Nov. 8, 2025.)  Some legal commentators have described the changes to section 220 as " '[s]weeping [c]orporate [l]aw [a]mendments' . . . aimed at "dramatically limit[ing] stockholders' ability to access corporate books and records" to create 'new areas of uncertainty that boards may exploit to avoid accountability to stockholders and remove a potent tool used by activists to uncover board wrongdoings."  (Meyer, *Blunting the "Tools at Hand": Recent Developments in Delaware Books-and-Records Demand Law* (2025) 33 Univ. of Miami Bus. L.Rev. 387, 397.)

communications in writing or by electronic transmission to stockholders generally within the past 3 years preceding the date of the demand"; and "[a]nnual financial statements of the corporation for the 3 years preceding the date of the demand." (Del. Code, § 220, subd. (a)(1).)

Section 220 states that "in any proceeding brought by a stockholder . . . to compel the inspection of books and records, the Court of Chancery may not order the corporation to produce any records of the corporation other than the books and records" defined in section 220, subdivision (a)(1). (Del. Code, § 220, subd. (e).) Amended section 220 does include a limited failsafe whereby a court may order production of documents beyond those enumerated categories, but only if the stockholder (1) makes a showing of "compelling need for an inspection of such records to further the stockholder's proper purpose," and (2) demonstrates "by clear and convincing evidence that such specific records are necessary and essential to further such purpose." (Del. Code, § 220, subd. (g).)

Here, pursuant to section 1601, Salamon requested five years of quarterly and annual financial statements, five years of board meeting minutes, copies of financial audits, copies of federal and state income tax returns, documents showing off-balance sheet loans, documents showing loans to board members, and any documents, complaints, and communications among board members discussing whether Orchid has violated state and/or federal gambling laws. Many of these documents are apparently beyond the enumerated "books and records" in section 220, subdivision (a)(1), such, as for example, records based on a five-year lookback period and loan sheets. To obtain his requested records under section 1601, Salamon need only show that he seeks to inspect these records for a purpose reasonably related to his interests as a shareholder. But to obtain records

30

beyond the enumerated "books and records" in section 220, Salamon would have to make additional, onerous showings, one of which must be demonstrated by clear and convincing evidence.

Orchid concedes that these discrepancies exist between California's and Delaware's inspection statutes. Not only that, as Salamon notes, in Orchid's complaint in the Delaware action, it alleged that "[a]lmost all of the categories of documents and time frames that Salamon requested to inspect in California and under California law are prohibited by Section 220 of the [Delaware Code]."

In addition, there is, as Salamon observes, another discrepancy between the Delaware and California statutes: California permits shareholders to recover attorney fees under section 1604,[11] but section 220 does not contain a similar provision.[12] (*Juul, supra*, 238 A.3d at p. 917.)

---

[11] Section 1604 states: "In any action or proceeding under Section 1600 or Section 1601, if the court finds the failure of the corporation to comply with a proper demand thereunder was without justification, the court may award an amount sufficient to reimburse the shareholder or holder of a voting trust certificate for the reasonable expenses incurred by such holder, including attorneys' fees, in connection with such action or proceeding."

[12] Orchid argues Salamon waived this argument because he raised it for the first time at the hearing on the motion to stay. In general, if a point asserted on appeal was not adequately briefed in the trial court, the appellate court may treat the point as a forfeited new theory. (See *Mendoza v. Trans Valley Transport* (2022) 75 Cal.App.5th 748, 768–770; but see *Liu v. Miniso Depot CA, Inc.* (2024) 105 Cal.App.5th 791, 800, fn. 3 [declining to find forfeiture of argument first raised in trial court reply brief where issue was one of law, trial court's order addressed argument, and respondent had chance to address it on appeal.] Salamon's argument that compares the existence of an attorney fee provision in section 1604 with the lack of such a provision in section 220 is a question of law. Also, although he did raise this argument for the first time at the hearing on Orchid's motion to stay, Orchid's counsel had an opportunity to address the argument. Under these circumstances, we decline to find forfeiture.

Delaware courts follow the "American Rule," under which each party bears its own attorney fees and costs. (*Juul, supra*, 238 A.3d at p. 917 & fn. 11.) Delaware courts have recognized limited equitable exceptions to this rule that will justify a fee-shifting award, including the exception for bad faith conduct during the litigation. (*Montgomery Cellular Holding Co., Inc. v. Dobler* (Del. 2005) 880 A.2d 206, 227.) But "[t]he bad faith exception is applied in 'extraordinary circumstances.' " (*Ibid.*)

Thus, as Salamon observes and Orchid concedes, the Delaware inspection statute is more restrictive and "far less favorable." In short, Orchid has failed to meet its burden of showing that Delaware law would provide "the same or greater rights than California" and, therefore, that enforcing the forum selection clause " 'will not in any way diminish [Salamon's] unwaivable statutory rights.' " (*Verdugo, supra*, 237 Cal.App.4th at p. 157.) To the contrary, enforcing the forum selection clause would allow Orchid to circumvent the specific inspection rights afforded under sections 1600 and 1601 that the Legislature has declared "may not be limited" (§§ 1600, subd. (d), 1600, subd. (b)), and thus the fundamental public policy embodied in those statutes.

Orchid's counterarguments do not convince us otherwise. For example, it argues that "the Superior Court correctly held" that Salamon's unwaivable rights under sections 1600 and 1601 "would not be waived if this dispute was moved to Delaware court and adjudicated under Delaware law because Delaware law gives shareholders the right to inspect corporate records provided they seek to do so for a proper purpose. *See* 8 Del. C. §220. As the Superior Court noted, [Salamon's] stated purpose for inspecting Orchid's records—i.e., to value a buyback offer for his Orchid shares—is *per se* proper under Delaware law. . . ." Passing over the fact that Orchid itself did not

raise this argument below, its suggestion that Salamon would be entitled under Delaware law to the records he seeks rings hollow, as the record indicates that Orchid has maintained that Salamon's inspection request was not for a proper purpose and denied his inspection request on that basis. Thus, there is at least a factual question on this issue, a question that the trial court did not expressly address, and we decline to do so in the first instance.

Orchid also contends that "[e]ven if the[ ] discrepancies [between the California and Delaware inspection statutes] exist, they do not make the forum selection clause unenforceable because the dispositive question is whether [Salamon] would forfeit his right to inspect corporate records if this action were litigated in Delaware under Delaware law—not whether he would obtain the same scope of records for review. . . . [I]t does not matter if the inspection rights are the same in Delaware and California law–what matters is that [Salamon] would have the right to inspect Orchid's books and records to evaluate his buyout offer under either set of laws."

We are unpersuaded. As Salamon asserts in his reply brief, Orchid incorrectly "recite[s] . . . the applicable standard, or of who bears the burden of meeting that standard. Instead, the standard is 'the party seeking to enforce the forum selection clause [that is, Orchid, not Salamon] bears the burden to show litigating the claims in the contractually-designated forum "will not diminish *in any way* the substantive rights afforded . . . under California law." ' [Citation.] '[A] defendant [again, Orchid, not Salamon] can meet its burden only by showing the foreign forum provides the same or greater rights than California, or the foreign forum will apply California law on the claims at issue.' [Citation.] . . . . Orchid fails to show how compelling Salamon to make demands under Delaware law, by enforcing its Bylaws'

33

forum selection clause, would not impermissibly limit Salamon's California inspection rights. . . . [I]n other words, the applicable statutes themselves do not allow for *any* diminution of Salamon's California inspection rights–those rights 'may not be limited by the articles or bylaws.' . . . §§ 1600[(d)], 1601(b). Thus, impermissibly limiting those rights does not require . . . complete failure to recognize them, or their forfeiture or complete preclusion, as Orchid contends."

Moreover, Orchid attempts, unpersuasively, to make artificial distinctions between various inquiries that are related to each other and clearly "matter" to the broader question of whether Delaware "provides the same or greater rights than California." (*Verdugo, supra*, 237 Cal.App.4th at p. 157.) Contrary to Orchid's assertion, relevant to that question is whether Salamon "would obtain the same scope of records for review" under Delaware law. After all, the statutes are at their core concerned with the inspection of corporate *records*.

Orchid also relies on *CQL Original Prods., Inc. v. NHL Players' Assn.* (1995) 39 Cal.App.4th 1347 (*CQL*) for the proposition that "enforcing a forum selection clause would not be *per se* unreasonable merely because the law in the selected forum offers narrower remedies than California law." But *CQL* is distinguishable. The *CQL* court held that a potential difference in the law of the two competing forums at issue did "not amount to a conflict involving public policy" so as to preclude enforcement of a forum selection clause, "given the absence of any statute prohibiting the parties from . . . waiving California law." (*Id.* at p. 1357.) Here, in contrast, it is undisputed that sections 1600 and 1601 contain anti-waiver provisions.

Lastly, we address Orchid's argument that "in the unlikely event that [Salamon] is deemed to have been deprived of his right under the California

34

Corporations Code to inspect Orchid's books and records, such deprivation would not rise to the level of a waiver because [Salamon] could simply move to lift the stay imposed by the Superior Court." *Verdugo* rejected a similar argument. In *Verdugo*, "at oral argument, [the defendant] argued we should affirm the trial court's ruling because the court stayed rather than dismissed the action, and therefore the trial court retains jurisdiction to lift the stay if the Texas court refuses to apply California law. According to [the defendant], the ability to resume the action if 'something goes awry' is the reason California trial courts generally are required to stay rather than dismiss an action when ordering parties to litigate their dispute in a foreign jurisdiction under the forum non conveniens doctrine." (*Verdugo*, *supra*, 237 Cal.App.4th at p. 161.)

*Verdugo* concluded that the defendant "overstate[d] a trial court's authority to resume an action after staying it on forum non conveniens grounds." (*Verdugo*, *supra*, 237 Cal.App.4th at p. 161.) *Verdugo* first raised a concern whether the trial court could lift the stay if the Indiana court declined to apply California law, given existing law. (*Ibid*.) *Verdugo* went on to note that "[i]f the trial court sought to resume proceedings every time the foreign jurisdiction made an adverse ruling, the unseemly conflicts among jurisdictions that the forum non conveniens doctrine is designed to eliminate would be commonplace." (*Id*. at p. 162.) It thus concluded: "the possibility the trial court could resume proceedings on [the plaintiff's] claims fails to establish enforcing the forum selection clause would not diminish [the plaintiff's] unwaivable statutory rights under the Labor Code." (*Ibid*.)

In *America Online*, this court rejected a similar plea from the defendant that the trial court erred "in not granting AOL's request for a stay of the California action to allow the Virginia court to determine whether the relief

available to [the real party in interest] i[s] consistent with California consumer law." (*America Online*, *supra*, 90 Cal.App.4th at p. 20.) There, we noted that "AOL suggests no procedural device which would allow a California court to proceed with the underlying case after a Virginia court has ruled," citing the full faith and credit clause of the United States Constitution. (*America Online*, at p. 21.)

We likewise conclude that the possibility that the trial court could resume proceedings on Salamon's claims fails to establish enforcing the forum selection clause would not diminish his statutory rights under sections 1600 and 1601.

In sum and in short, the trial court abused its discretion in enforcing the forum selection clause in Orchid's bylaws and in thereby granting Orchid's motion to stay this proceeding.

## DISPOSITION

The order granting Orchid's motion to stay is reversed. The matter is remanded to the trial court with directions to vacate the order and enter a new order denying the motion. Salamon is entitled to recover his costs on appeal.

_____

RICHMAN, J.

We concur.

_____

STEWART,  P. J.

_____

DESAUTELS, J.

(A173959P)

San Francisco County Superior Court

Trial Judge:        Christine Van Aken

Counsel:

Fitzgerald Knaier, Keth M. Cochran and Kyle W. Hoffman for Plaintiff and Appellant.

Baker & Hostetler, Marco Molina and Shaia A. Stambuk for Defendant and Respondent.